UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHAWN HOLMES,

                Plaintiff,

   -against-                                1:19-CV-0617 (LEK/DJS)

COUNTY OF MONTGOMERY, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Shawn Holmes has filed this lawsuit under 42 U.S.C. § 1983 against the County of Montgomery (the "County"), the Montgomery County Sheriff's Department (the "Sheriff's Department"), Montgomery County Sheriff Michael Amato, three unnamed Montgomery County Correction Officers ("John Does #1–3"), and Correction Officer Kagan Buck (together, "Defendants"). Dkt. No. 15 ("Amended Complaint"). Plaintiff alleges that, while he was incarcerated in the Montgomery County Jail, he was violently assaulted in violation of his rights under the United States Constitution and New York tort law. Id.

Defendants have moved to dismiss several of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 25 ("Second Motion to Dismiss" or "Motion"); 25-6 ("Memorandum"). Plaintiff opposes this Motion, Dkt. No. 26 ("Opposition"), to which Defendants reply, Dkt. No. 29 ("Reply"). For the following reasons, the Court grants in part and denies in part Defendants' Motion.

### II. BACKGROUND

At the motion to dismiss stage, the Court draws all facts from the Amended Complaint, and "assumes all factual allegations in the Complaint are true." Colangelo v. Champion Petfoods

USA, Inc., No. 18-CV-1228, 2020 WL 777462, at *1 (N.D.N.Y. Feb. 18, 2020) (Kahn, J.) (citing Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012)). Besides the facts alleged in the complaint itself, "a district court may [also] consider . . . documents attached to the [complaint] as exhibits, . . . documents incorporated by reference in the [complaint], and documents the [complaint] relies [so] heavily upon that they are render[ed] integral to the [complaint]." ICM Controls Corp. v. Honeywell Int'l, Inc., No. 12-CV-1766, 2019 WL 7631075, at *10 (N.D.N.Y. Dec. 3, 2019) (Kahn, J.) (internal quotation marks omitted) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)).

**A. Facts**

*1. Buck's Assault of Plaintiff*

On October 7, 2018, officers of the Montgomery County Sheriff's Department arrested Plaintiff and took him to the County jail. Am. Compl. ¶ 13.

Shortly after arriving at the jail, Correction Officer Buck began to ask Plaintiff a series of questions about Plaintiff's mental health. Id. ¶ 14. Partway through Buck's questions, Plaintiff asked Buck and several other nearby correction officers ("C.O.s") if he could use the phone. Id. Buck told Plaintiff that he could use the phone if he answered "a few more questions." Id. Plaintiff proceeded to answer more questions, but Buck still refused to let Plaintiff use the phone. Id. Plaintiff then refused to answer any more questions until Buck allowed him to use the phone. Id. Plaintiff's refusal angered Buck, who began to "taunt" Plaintiff, telling him to "just go home and die" and "to kill himself." Id.

At this point, Buck and "approximately three other unknown" C.O.s[1] took Plaintiff to a cell. Id. ¶ 15. Buck then told Plaintiff to sit down on the bed in the cell, which Plaintiff did. Id.

---

[1] Presumably John Does #1–3.

¶ 16. Shortly thereafter, Plaintiff stood up to speak with another unknown C.O. who was standing near the cell. Id. Though Plaintiff stood, he never exited the cell, nor attempted to escape. Id. ¶ 17.

Buck was still "irate" over Plaintiff's requests to use the phone and refusal to answer all the mental health questions, and when he saw Plaintiff stand up he "brutally assaulted [Plaintiff] without cause, reason[,] or provocation." Id. Specifically, Buck repeatedly "slam[med]" Plaintiff's head against the wall, despite the fact that Plaintiff "posed no threat" to Buck or any other officer. Id. Another officer then had to pull Buck off Plaintiff. Id. ¶ 18.

As a result of Buck's assault, Plaintiff had injuries to his head, face, eyes, and limbs. Id. ¶ 19. He also began to suffer from tremors, seizures, and emotional trauma. Id.

Plaintiff later reported Buck's assault, spoke with two investigators at the Sheriff's Department, and requested that the Sheriff's Department investigate Buck's conduct. Id. ¶ 20. However, even though other unknown C.O.s corroborated Plaintiff's story, the Sheriff's Department never conducted a "meaningful investigation." Id. Nor did the department take any "meaningful action" against Buck. Id. ¶ 21.

### 2. Past Excessive Force Incidents

Buck's assault of Plaintiff is not the first time that C.O.s have assaulted an inmate at the County Jail. Am. Compl. ¶ 23. For example, in 2015, multiple officers were arrested and prosecuted for "mistreat[ing]" an inmate named Ryan Cook. Id. Also in 2015, C.O.s attacked an inmate named Jose Samuels when he requested a transport van to accommodate his physical disabilities. Id. ¶ 24.

Plaintiff asserts that these cases demonstrate a "repeated pattern of constitutional violations at the . . . County Jail, especially relating to excessive force." Id. ¶ 33. Despite "having

known for years" about this pattern, Defendants "have failed to take any meaningful remedial action." Id.[2]

### B. Plaintiff's Claims

Based on these events, Plaintiff asserts the following five causes of action: (1) Excessive force and failure to protect claims under the Fourth, Eighth, and Fourteenth Amendments against Buck and John Does #1–3, Am. Compl. ¶¶ 27–30; (2) claims against Amato, the Sheriff's Department, and the County for "fail[ing] to institute appropriate written policies on . . . the use of force," or, alternatively, for instituting such policies but refusing to enforce them, id. ¶¶ 31–38; (3) claims against Amato, the Sheriff's Department, and the County for failure to train, supervise, and discipline their employees; id. ¶¶ 39–44; (4) state law assault and battery claims against Buck, Amato, the Sheriff's Department, and the County, id. ¶¶ 45–48; and (5) negligent

---

[2] In support of their Motion, and to add additional context to Plaintiff's allegations about the Cook and Samuels excessive force incidents, Defendants ask the Court to consider the complaints filed in the litigation arising out of those incidents as well as a news article describing how the officers in Cook's case pled guilty to related criminal charges. See Dkt Nos. 25-3 to -5 ("Exhibits"). Defendants argue that the Court should consider these documents when deciding the Motion because they are "integral" to the Amended Complaint. Mem. at 3–4. However, the Court disagrees. A "document [is] integral" to a complaint "where the complaint relies heavily upon its terms and effect." DiFolco, 622 F.3d at 111. Here, there is no evidence or indication that Plaintiff relied on these particular documents when drafting his Amended Complaint. Nor, by referring to the *incidents* in which Cook and Samuels were subjected to excessive force, does the Amended Complaint necessarily refer to the *complaints* filed by those individuals in their civil rights lawsuits against the County. See id. (at 12(b)(6), court can consider "*documents* incorporated by reference in the complaint") (emphasis added). Plaintiff could have learned the details of the Cook and Samuels incidents from newspaper reports, or from word of mouth; it is nothing more than Defendants' speculation that Plaintiff relied on these particular documents. Apparently as an alternative, Defendants assert, without elaboration, that "[a] court may also consider documents about which it can take judicial notice." Mem. at 4. If, by making this assertion, Defendants mean that the Court should consider the Exhibits because it can judicially notice them, Defendants ignore the rule that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). Therefore, the Court declines to consider the Exhibits at this stage.

supervision against Amato, the Sheriff's Department, and the County, id. ¶¶ 49–51. In addition, Plaintiff asks for punitive damages against Buck and John Does #1–3. Id. ¶¶ 52–53

### C. Procedural History

Plaintiff initially filed suit on April 19, 2019 in state court. Dkt. No. 1-1. Defendants then removed the action to this Court on May 23, 2019, Dkt. No. 1 ("Notice of Removal"), before filing a motion to dismiss on June 7, 2019. Dkt. No. 10 ("First Motion to Dismiss"). In response to the First Motion to Dismiss, Plaintiff filed the Amended Complaint on June 28, 2018 under Federal Rule of Civil Procedure 15, which allows a party to amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b). See Dkt. No. 15; see also Fed. R. Civ. P. 15(a)(1)(B). Plaintiff then also filed an opposition to the First Motion to Dismiss, arguing primarily that the Court should deny the First Motion to Dismiss as moot. Dkt. No. 17 ("Opposition to First Motion to Dismiss"). Defendants made no reply to this filing, instead filing the Second Motion to Dismiss on July 26, 2019. See Mot.

## III. LEGAL STANDARD

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Put another way, a claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" Facci-Brahler v. Montgomery Cty., No. 18-CV-941, 2020 WL 360873, at *2 (N.D.N.Y. Jan. 22, 2020) (Kahn, J.) (alterations in original) (quoting Twombly,

5

550 U.S. at 556). "In assessing whether this standard has been met, courts 'must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[] . . . .'" Charles Ramsey Co., Inc. v. Fabtech-NY LLC, No. 18-CV-546, 2020 WL 352614, at *9 (N.D.N.Y. Jan. 21, 2020) (Kahn, J.) (alteration in original) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)).

## IV. DISCUSSION

Defendants seek dismissal of all causes of action against the Sheriff's Department, Amato, and the other individual defendants in their official capacities. Mot. at 2. They also seek dismissal of the second, third, and fifth causes of action in their entireties. Id.

The Court addresses the following issues, in turn: (A) the First Motion to Dismiss; (B) the claims against the Sheriff's Department; (C) the claims against Amato; (D) the claims against Buck and John Does #1–3 in their official capacities; (E) the second and third causes of action for municipal liability; and (F) the fifth cause of action for negligent supervision under New York law.

### A. First Motion to Dismiss

Preliminarily, the Court addresses the First Motion to Dismiss. Plaintiff argues that, in light of the Amended Complaint, the Court should deny the First Motion to Dismiss as moot. Resp. to First Mot. to Dismiss at 5–6. Defendants have lodged no objection to this argument. Therefore, because "[t]ypically, the filing of an amended complaint following the filing of a motion to dismiss the initial complaint moots the motion to dismiss," Praileau v. Fischer, 930 F. Supp. 2d 383, 388 (N.D.N.Y. 2013), the Court denies the First Motion to Dismiss as moot.

### B. Claims against the Sheriff's Department

The Sheriff's Department moves to dismiss all claims against it, arguing that the Department cannot be sued as an entity separate from the County itself under either federal or

6

state law. Mem. at 9. The Court agrees. See Lanning v. City of Glens Falls, No. 16-CV-132, 2017 WL 922058, at *3 (N.D.N.Y. Mar. 8, 2017), aff'd, 908 F.3d 19 (2d Cir. 2018) (dismissing § 1983 claims against county sheriff's department because such a department is "not [a] suable entit[y]"); Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) ("[P]laintiff's claims against the Warren County Sheriff's Department and the County are redundant."); Dudek v. Nassau Cty. Sheriff's Dep't, 991 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) ("New York law specifies the capacity of the Sheriff's Department to be sued . . . . Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.") (internal quotation marks omitted). Moreover, Plaintiff has not opposed this aspect of the Motion, see generally Opp'n, and has therefore abandoned these claims, see, e.g., Bonilla v. Smithfield Assocs. LLC, No. 09-CV-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (holding that, because plaintiff "fail[ed] to respond to . . . two arguments" for dismissing certain claims, he had "effectively abandoned" those claims). Therefore, the Court dismisses with prejudice Plaintiff's claims against the Sheriff's Department. See Dudek, 991 F. Supp. 2d at 410 (dismissing claim against Sheriff's department with prejudice because "the Sheriff's Department is an 'administrative arm' of the County, and, as such, the department cannot be sued separately").

### C. Claims Against Amato

Amato urges the Court to dismiss all the causes of action brought against him. Mem. at 9–11. Amato argues that the Amended Complaint fails to state any federal claims against him because the "boilerplate" allegations do not adequately plead that he was "personal[ly] involve[d]" in the "alleged constitutional violations." Id. at 10. And Amato argues that Plaintiff's state law claims against him fail because he was not Buck's employer—the County was—and

7

thus he cannot be held liable for Buck's actions through the doctrine of respondeat superior. Id. at 10–11.

Plaintiff failed to respond to any of these arguments. See generally Opp'n. Therefore, the Court finds that Plaintiff has abandoned his claims against Amato and dismisses Amato as a defendant. See Felix v. New York State Dep't of Corr. & Cmty. Supervision, No. 16-CV-7978, 2018 WL 3542859, at *6 (S.D.N.Y. July 23, 2018) (dismissing plaintiff's claims and explaining that "[a]t the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

### D. Claims against Buck and John Does #1–3 in their Official Capacities

Plaintiff brings claims against Buck and John Does #1–3 in their official and their individual capacities. Am. Compl. ¶¶ 7–10. Suits against municipal officers in their official capacities are effectively the same as suing the municipal entity itself. See Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 WL 4805354, at *10 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.) ("A claim asserted against an individual [officer] in his official capacity . . . is in effect a claim against the governmental entity itself." (citing Lore v. City of Syracuse, 670 F.3d 127, 164 (2d Cir. 2012)). Therefore, the Court dismisses any claims brought against Buck and John Does #1–3 in their official capacities as duplicative of Plaintiff's claims against the County. See Olschafskie v. Town of Enfield, No. 15-CV-67, 2015 WL 9239742, at *1 (D. Conn. Dec. 17, 2015) ("[I]f a plaintiff makes the same claims against municipal officers in their official capacities and the municipality in which the officers are employed, the official capacity claims are redundant and should be dismissed.").

**E. Second and Third Causes of Action – Failure to Train and Supervise**

The Court notes first that it addresses Plaintiff's second and third causes of action together. Both causes of action assert liability against the same defendant—the County[3]—for largely the same conduct—a failure to properly train, supervise, and discipline Sheriff's Department employees, specifically regarding the use of force. Compare Am. Compl. ¶¶ 31–38 (second cause of action) with id. ¶¶ 39–44 (third cause of action); see also Am. Compl. ¶¶ 34–35 (stating in the second cause of action that a "failure by defendants to properly train or supervise its employees has predictably resulted in a pattern of constitutional abuses . . . relate[d] to harassment and use of excessive force"), 41–42 (stating in the third cause of action that "the Defendants have failed to supervise and/or discipline employees under their supervision . . . [and] have failed to institute appropriate training regimens . . . ." "relate[d] to the harassment and use of force against inmates").[4] Because of these similarities, Defendants assert that the two causes of action "are essentially one claim" that "can be considered . . . together." Mem. at 4. Plaintiff does not appear to disagree, addressing Defendants' arguments as to both causes of

---

[3] Because the Court dismisses Plaintiff's claims against Amato and the Sheriff's Department on other grounds, the County is the only remaining defendant to these causes of action.

[4] To the extent there is a difference between these causes of action, it appears to be that the second alleges an "Implementation of . . . Policies," or a "Failure to Implement . . . Policies," that "Directly Violate Constitutional Rights," Am. Compl. ¶¶ 30–31 (capitalization in original), whereas the third more narrowly addresses a "Failure to Train and Supervise Employees," id. ¶¶ 38–39 (capitalization in original). However, "[a]lthough Plaintiff uses the word 'policy' in his" Amended Complaint, see Am. Compl. ¶¶ 37, 43, "he has neither alleged that there is an officially promulgated municipal policy, nor identified any such policy, that condones the use of excessive force by" officers of the Sheriff's Department. See Triano v. Town of Harrison, NY, 895 F. Supp. 2d 526, 533 (S.D.N.Y. 2012). "Therefore, Plaintiff has not alleged the existence of any municipal policy," see id., and the Court thus dismisses the second cause of action to the extent it alleges a separate claim based on the implementation of a such a policy.

9

action together in his Opposition. Opp'n at 5–7. Consequently, the Court considers both causes of action simultaneously.

Turning to the substance of Plaintiff's claims, the County moves to dismiss Plaintiff's second and third cause of action against it, arguing that the allegations in the Amended Complaint are conclusory and implausible. Mem. at 6. The Court, however, finds that Plaintiff has stated a claim against the County.

Where, as here, a plaintiff seeks relief under § 1983 from a municipal entity, the rules of municipal liability laid out in Monell and its progeny apply.[5] See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Under Monell, municipalities cannot be held vicariously liable for civil rights violations perpetrated by their employees, see Monell, 436 U.S. at 691–92, and are responsible only for "their own illegal acts," Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). To survive a motion to dismiss, therefore, a plaintiff asserting municipal liability must plausibly allege that a constitutional violation occurred because of that municipality's specific policy or custom. See Monell, 436 U.S. at 694–95; see also Hancock v. Cty. of Rensselaer, 337 F. Supp. 3d 175, 184–85 (N.D.N.Y. 2018) ("A municipality is liable for the conduct of its agent if that conduct 'constitute[d] the municipality's final decisions' sufficiently to demonstrate that [p]laintiffs were harmed because of County policy.'") (quoting Anthony v. City of N.Y., 339 F.3d 129, 139 (2d Cir. 2003)). Any of the following may demonstrate a municipal policy or custom:

> (1) a formal policy that has been officially endorsed by the municipality, Monell, 436 U.S. at 694; (2) an action taken by an official who is responsible for establishing municipal policies with respect to the subject

---

[5] The principles of municipal liability apply to the County. See Hill v. Cty. of Montgomery, No. 14-CV-933, 2019 WL 5842822, at *17 (N.D.N.Y. Nov. 7, 2019) (applying Monell and when determining whether the plaintiff's § 1983 claim against Montgomery County survived summary judgment).

> matter in question, Pembaur[,] . . . 475 U.S. [at] 483–84 . . . ; (3) a widespread practice that is so "permanent and well settled as to constitute a 'custom or usage' with the force of law," City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); or (4) a failure to train, supervise, or discipline that "amounts to a deliberate indifference to the rights of persons with whom the police come into contact," City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Acquah v. City of Syracuse, No. 18-CV-1378, 2019 WL 3975463, at *4 (N.D.N.Y. Aug. 22, 2019) (Kahn, J.).

Here, Plaintiff appears to bring his Monell claim under a deliberate indifference theory. See Am. Compl. ¶¶ 34–35, 41–42 (alleging that the County "demonstrated deliberate indifference to the rights of inmates," by failing to adequately "train," "supervise," "hire," and "discipline" its officers). Plaintiff alleges that the County's deliberate indifference led to "a repeated pattern of constitutional violations at the Montgomery County Jail, especially relating to excessive force." Id. ¶ 33. The Court first addresses Plaintiff's failure-to-train allegations, then his remaining allegations.

   *1. Failure to Train*

"For a failure to train claim, it is 'ordinarily necessary' for a plaintiff to show a pattern of similar constitutional violations by untrained employees . . . because [such a pattern] puts policymakers on notice that they have a deficient training program, such that their failure to make changes can be considered a deliberate choice." Daniel v. Begnoche, No. 13-CV-79, 2014 WL 12781295, at *5 (D. Vt. May 21, 2014) (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). "However, 'in a narrow range of circumstances' it is possible for single incidents to be sufficient to show deliberate indifference." Id. (quoting Connick, 563 U.S. at 63); see also Breitkopf v. Gentile, 41 F. Supp. 3d 220, 253 (E.D.N.Y. 2014) (stating that Connick "reaffirmed the viability, in a narrow range of circumstances, of the single-incident theory of liability envisioned in Canton") (internal quotation marks omitted). "The 'single-incident' theory is only

11

available where the unconstitutional consequences of the failure to train would be 'patently obvious' and 'highly predictable.'" Id. (quoting Connick, 563 U.S. at 64); see, e.g., Waller v. City of Middletown, 89 F. Supp. 3d 279, 284–86 (D. Conn. 2015) (finding that the complaint stated a claim "under the single-incident theory of liability" because "the need to train officers on the constitutional limitations of searches of private residences conducted pursuant to the execution of an arrest warrant is . . . obvious"). The Second Circuit has recognized the viability of this theory in the excessive force context. See Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir. 1980) ("[A] single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference . . . on the part of officials in charge.").

Plaintiff alleges in the Amended Complaint that Buck brutally assaulted him, "repeatedly slam[ming] [Plaintiff's] head against the cell wall," even though Plaintiff "posed no threat." Am. Compl. ¶¶ 16–19. Buck's assault took place in front of other C.O.s, John Does #1–3, injured Plaintiff's head, eyes, face, and extremities, and caused Plaintiff to have seizures and tremors. Id. These allegations plausibly state a "single-incident" deliberate indifference claim. See Lucas v. New York City, 842 F. Supp. 101, 104 (S.D.N.Y. 1994) ("Plaintiff alleges that he was surrounded by a group of New York City police officers who stood by while he was 'brutalized' by [a fellow officer]. Plaintiff has thus alleged behavior by a group of New York City police officers that supports an inference of inadequate training or supervision."); McLeod v. City of New York, No. 14-CV-7904, 2016 WL 3144052, at *3 (S.D.N.Y. Jan. 29, 2016) (denying city's motion to dismiss Monell claim where inmate-plaintiff alleged that Department of Correction officers beat him and he "was injured so severely that he needed to be taken to the hospital while

12

having posed no threat"); Edwards v. City of New York, No. 14-CV-10058, 2015 WL 5052637, at *6 n.4 (S.D.N.Y. Aug. 27, 2015) ("[P]laintiff's alleged vicious beating by multiple officers in response to his pleas for medical attention, if accepted as true, was arguably sufficiently brutal and egregious to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference by officials in charge.").

This finding alone warrants denial of the County's motion to dismiss, however the Court also finds that Plaintiff's allegations satisfy the general test for stating a deliberate indifference claim outside the single-incident context. That test contains three elements:

> "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." [Walker v. City of New York, 974 F.2d 293, 197 (2d Cir. 1992)] (citing Harris, 489 U.S. at 390 n. 10, 109 S.Ct. 1197). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." Id. "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. at 298.

Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007).

Here, Plaintiff's allegations satisfy each of the above three elements. The first prong is met because there can be little doubt that policymaking county officials know "to a moral certainty" that officers in the County jail will encounter inmates who make requests or decline to answer questions. See Alexander v. Hunt, No. 16-CV-192, 2018 WL 3801240, at *3 (D. Vt. Aug. 9, 2018) (finding that first Walker element was met where "the common sense inference that [local] police interacted with Black motorists . . . is reasonable"); Bertuglia v. City of New York, 839 F. Supp. 2d 703, 738–39 (S.D.N.Y. 2012) (ruling that plaintiff's allegations met the first Walker factor because the allegations concerned the "basic facets of an ADA's job"). Second, Plaintiff's allegations regarding the Cook and Samuels incidents demonstrate that "there is a history of employees mishandling" inmates at the County jail. See Alexander, 2018 WL

13

3801240, at *3 (analysis of past incidents of racially biased policing "allow[ed] a reasonable inference that" plaintiff's encounter with police was similarly biased). And third, "it is beyond doubt that a [Department of Corrections] officer's use of excessive force will frequently cause the deprivation of a citizen's constitutional rights." Edwards, 2015 WL 5052637, at *6. Thus, "Plaintiff's failure to train/supervise claim . . . passes muster at this stage." Id.; see also Osterhoudt v. City of New York, No. 10-CV-3173, 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) ("[P]laintiff's citations to pending lawsuits . . . will not suffice to overcome summary judgment . . . [but] they do permit a plausible inference of deliberate indifference.").

      The County disputes this conclusion and demands that Plaintiff cite additional examples of misconduct in order to "establish a pattern . . . sufficient to show deliberate indifference." Mem. at 8. According to the County, the two additional instances cited by Plaintiff—the Cook and Samuels incidents—are not enough. Id. But this argument fails. For one, it ignores the existence of the "single-instance" theory of Monell liability discussed above. For another, the County's citations in support of its argument are inapposite. The County relies on Jones v. Town of E. Haven, 691 F.3d 72 (2d Cir. 2012) and Greene v. City of New York, 742 F. App'x 532 (2d Cir. 2018), Mem. at 8, yet neither of these cases concerned a 12(b)(6) motion or addressed the quantum of allegations sufficient to state a plausible claim, see Jones, 691 F.3d at 85 (two or three prior examples of discriminatory policing insufficient to prove Monell claim *at trial*); Greene, 742 F. App'x at 537 (two prior violations not enough to sustain plaintiff's burden at *summary judgment*); Cf. Kimbrough v. Town of Dewitt Police Dep't, No. 08-CV-3, 2010 WL 3724017, at *6 (N.D.N.Y. Sept. 15, 2010) (denying motion to dismiss failure-to-train claim despite the fact that plaintiff had alleged no prior instances of misconduct). The County also relies on Cipolloni v. City of New York, 758 F. App'x 76 (2d Cir. 2018), which addressed a

motion to dismiss a plaintiff's Monell claim for false arrest. Mem. at 8. In Cipolloni, the plaintiff pointed to two prior false arrest lawsuits filed against the defendant city as proof of the city's deliberate indifference. Cipolloni, 758 F. App'x at 79. The Cipolloni court granted the motion to dismiss, explaining that the two prior lawsuits cited to by the plaintiff had been dismissed, may not have represented actual false arrests, and therefore could not be used to establish a pattern. Id. However, the Cipolloni Court did not base its holding on any purported rule that two examples of prior instances of misconduct are always insufficient to establish a pattern. See id. Thus, the County's citations fail to support its assertion that "merely alleging two instances [of prior bad acts] . . . would be insufficient under any circumstance to establish a pattern of similar misconduct," Mem. at 8, and this argument is unfounded, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 128 (2d Cir. 2004) ("While we have held that proof of a policymaker's failure to respond to repeated complaints of civil rights violations would be sufficient to establish deliberate indifference, we have never required such a showing. The means of establishing deliberate indifference will vary given the facts of the case and need not rely on any particular factual showing.") (internal citations omitted).

The County also claims that Plaintiff's allegations are not specific enough to meet Twombly and Iqbal's plausibility standard. Mem. at 6. However, Plaintiff "cannot be expected at this stage to make particularized assertions about the details of the [County's] training program." Alexander, 2018 WL 3801240, at *5 (citing Amnesty, 361 F.3d at 130 n.10 ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation.")); see also Kimbrough, 2010 WL 3724017, at *6 (stating, about thin allegations in the plaintiff's complaint, "it is hard to fathom how a plaintiff could

15

provide more detail at the pleading stage regarding a Monell claim based on failure to train."). Plaintiff's "burden at this stage is to assert facts that allow a reasonable inference of a deficiency in the [County's] training program that rises to [the] level of deliberate indifference to [an inmate's] rights." Alexander, 2018 WL 3801240, at *5. The Court finds that Plaintiff's allegations, albeit thin, meet this burden and plausibly state a deliberate indifference claim against the County for failure to train. See Selvon v. The City of New York, No. 13-CV-6626, 2015 WL 4728144, at *4 (E.D.N.Y. Aug. 10, 2015) (denying motion to dismiss Monell claim where thin allegations were "sufficient . . . for the Court to infer that [plaintiff's] treatment during his confinement was the result of something more than a single officer's misconduct" and reasoning that "[i]t is at least plausible that the 'something more' was a custom or policy of encouraging, condoning or turning a blind eye to the types of misconduct about which [the plaintiff] complains"); Best v. Vill. of Ellenville, No. 14-CV-968, 2014 WL 6387146, at *2 (N.D.N.Y. Nov. 14, 2014) ("The lone allegation in the amended complaint regarding the Village of Ellenville's failure to train is sufficient at this stage."); Devarnne v. City of Schenectady, No. 10-CV-1037, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) (denying motion to dismiss Monell claims even though plaintiff alleged few facts relating to a municipal custom or policy, because "[i]t [could] reasonably and plausibly be inferred from the nature of the alleged constitutional violations that Plaintiff's injuries were caused by a municipal custom or policy (including the failure to adequately train or deliberate indifference to constitutional rights)").

   2. *Failure to Supervise, Discipline, and Screen*

Though the County challenges Plaintiff's deliberate indifference theory to the extent it relies on an alleged failure to supervise or discipline, Mem. at 7–8, Plaintiff fails to defend these aspects of his claims, see generally Opp'n. Indeed, Plaintiff argues in his Opposition only that his Amended Complaint states a claim for a failure to train. Opp'n at 6 ("County Defendants'

16

claims . . . do[] not weaken plaintiff's claims regarding a systemic failure to *train*.") (emphasis in original). Because Plaintiff appears to abandon his failure-to-supervise and failure-to-discipline claims, the Court dismisses Plaintiff's second and third causes of action to the extent they rely on those theories.

Additionally, Plaintiff alleges in the Amended Complaint that Defendants "demonstrated deliberate indifference to the rights of inmates by failing to adequately hire[] [and] screen." Am. Compl. ¶ 42. But besides this sole mention of an alleged "failure to screen," Plaintiff has provided no other factual detail to support this claim. Therefore, to the extent that Plaintiff has alleged a failure-to-screen claim, the Court dismisses that claim. See Noonan v. City of New York, No. 14-CV-4084, 2015 WL 3948836, at *5 (S.D.N.Y. June 26, 2015) (dismissing failure-to-screen claim that was based solely on conclusory allegations).

**F. Fifth Cause of Action – State Law Negligent Supervision**

Plaintiff's fifth cause of action alleges that the County negligently supervised and retained employees in violation of New York law.[6] Am. Compl. ¶¶ 49–50. Defendant urges the Court to dismiss this claim because, under New York law, "where [an] individual employee alleged to have committed . . . tortious conduct in the course of his employment has been sued, and the employer is potentially responsible due to vicarious liability, or respondeat superior, than there is no separate claim against the employer for failing to property train or supervise the responsible employee." Mem. at 11 (citing Nesheiwat v. City of Poughkeepsie, N.Y., No. 11-CV-7072, 2013 WL 620267, at *2 (S.D.N.Y. Feb. 13, 2013) ("Under New York law, an employer may generally be liable for an employee's negligence where the employee is acting

---

[6] The Amended Complaint also names the Sheriff's Department and Amato as Defendants to this cause of action, see Am. Compl. ¶¶ 49–50, however, as explained above, the claims against those Defendants do not survive this Motion for other reasons.

17

within the scope of his or her employment under a theory of respondeat superior, however, no claim may proceed against the employer for negligent hiring, retention, supervision or training.")) (other citations omitted). Plaintiff has once again failed to respond to this argument. See generally Opp'n. Therefore, as Defendant suggests, see Reply at 1, Plaintiff has abandoned this claim, and the Court dismisses it. See Felix, 2018 WL 3542859, at *6.

## II. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' First Motion to Dismiss (Dkt. No. 10) is **DENIED** as moot; and it is further

**ORDERED**, that Defendants' Second Motion to Dismiss (Dkt. No. 25) is **GRANTED** as to: (1) all claims against the Montgomery County Sheriff's Department; (2) all claims against Amato; (3) all claims against Buck and John Does #1–3 in their official capacities; (4) Plaintiff's fifth cause of action in its entirety; and (5) Plaintiff's Second and Third causes of action brought under failure-to-supervise, failure-to-discipline, and failure-to-screen theories. The Second Motion to Dismiss is **DENIED** as to Plaintiff's Second and Third causes of action brought under a failure-to-train theory;[7] and it is further

**ORDERED**, that the Clerk shall terminate Amato and the Sheriff's Department as defendants in this matter; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

---

[7] Because Defendants did not move to dismiss either Plaintiff's First or Fourth causes of action, those causes of action may, of course, also proceed against the County and against Buck and John Does #1–3 in their individual capacities.

18

**IT IS SO ORDERED.**

DATED:	March 12, 2020
	Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge